Good morning, your honors. May it please the court, Jesse Evans Schroeder appearing on behalf of petitioners Jose Gonzalez-Caraveo and Monica Rodriguez Flores. The court directed us to come today prepared to address the Eighth Circuit decision in Gonzalez-Vega v. Lynch and I'll note at the outset that we do see some substantial similarities between Mr. Gonzalez-Caraveo's case and the case in Gonzalez-Vega. Obviously, most notably, the jurisdictional question of whether this court has jurisdiction to review the denial of administrative closure and also the question of if the court does find jurisdiction, whether there's an abuse of discretion, and we believe that the court should answer both of those questions in the affirmative. Mr. Gonzalez-Caraveo is asking the court to remand his case to the agency for proper consideration of his request for administrative closure. But before we get there, we recognize that the court will have to overcome prior precedent, finding that it does not have jurisdiction to address administrative closure decisions by the agency. So first, I'll address jurisdiction. And in addressing jurisdiction, what I'd like to do is quickly run through this Court's prior precedent and the limitations that this Court has sometimes found impede judicial review of certain agency discretionary actions. Also, I'll address when the Court has found review to be appropriate. And finally, I'll address how a matter of avatician, the Board's decision, allows for judicial review and, in fact, I believe anticipates judicial review of administrative closure decisions. This Court's prior decision in Diaz-Covarrubias v. Mukasey obviously found that the Court did not have jurisdiction to review the denial of administrative closure. The Diaz Court significantly found itself bound by this Court's prior decision in Ekimian v. INS and the Supreme Court's decision in Heckler v. Cheney. The overarching consideration, we believe, in both of those prior cases was whether the Court is presented with a sufficiently meaningful standard by which it can review the agency action. If there's no standard, review cannot be had. Notably, I believe, in Diaz-Covarrubias, citing to Ekimian, the Court found that where there's a precedential BIA decision specifying a standard for exercising its discretionary authority, that decision will supply a standard for review. Diaz-Covarrubias and its predecessors, Ekimian and cases cited to in Diaz-Covarrubias including Alcaraz v. INS and Sandoval-Luna, all make clear that the Court seeks guidance or some law to apply in order to find jurisdiction. And accordingly, that it's a very rare circumstance where the Court will leave agency action to unfettered discretion. This Court now has the benefit of guidance and law to apply in reviewing administrative closure decisions. And Avitisian is what supplies that law. Avitisian supplies a non-exhaustive list of five factors that the agency should consider when deciding whether administrative closure is appropriate. And in fact, Avitisian has been refined somewhat by a subsequent decision that the Attorney General has cited in their supplemental authorities, a matter of W.Y.U., which holds that the primary consideration for an immigration judge in deciding whether to administratively close a case is whether the party opposing the administrative closure has provided a persuasive reason for proceeding on the merits. So I believe that the factors, or we believe that the factors supplied in Avitisian give sufficient guidance to this Court to allow for judicial review of administrative closure decisions. So if we review this case for administrative closure decisions, I'm just curious, in light of the posture now, what could be determined? I mean, what's left with respect to your client's case? Well, that's a very good question, Your Honor. And assuming that this Court does find jurisdiction, obviously, the next step is to determine whether there was an abusive discretion. And our position is that in this case, there was an abusive discretion. The abusive discretion occurs because the agency failed to inquire into the factors outlined in Avitisian, failed to show proper consideration of those factors, and failed to state a reason for its denial that's in accord with those factors. And this Court's prior precedent, particularly in Ahmed v. Inet, Ahmed v. Holder, finds that if there is an abusive discretion, the results of a remand aren't important. The only remedy for that kind of abusive discretion is to remand to the agency for proper consideration of the factors. But I'm just having a little bit of trouble wrapping my mind around that, because we would remand for what? It seems like the Petitioners, but I don't know, and that's why I want to ask, but it just seems, based on my review, that the Petitioners are no longer awaiting any outside action or event that would constitute a basis for administrative closure. I mean, to what end would we do that? For proper review, Your Honor. For proper review, and maybe I'm just missing it, but proper review of what? Of their request for administrative closure. So even though there's no, I mean, do you acknowledge that there's no longer any outside action or event that would constitute or support administrative closure, we would still send it back, so that they could just say there's no longer a basis for, an underlying basis for administrative closure? I'm just having a little difficulty. I do believe that legally that is what this Court's precedent requires. In Ahmed v. Holder, the Court remanded to the agency, despite the fact that it wasn't clear that the individual was actually eligible for adjustment of status, but the Court remanded based on the abuse of discretion by the agency in their analysis. And I think that's pretty similar to what happened in Gonzales-Vega. I mean, if the Court is to believe that 21 years is going to be an acceptable wait time for the outside action, then perhaps I'm wrong. But I think that in Gonzales-Vega, the Eighth Circuit was also acknowledging that there wasn't necessarily outside action that was going to resolve the petitioner's case, but the case had to be remanded based on the abuse of discretion. Counsel, could I interject a question, please, on your taking you back to your jurisdiction point, and probably you can give me a clear answer. But we said we have prior cases saying we have no jurisdiction. Now, as a three-judge panel, as a three-judge panel, under our president of Miller v. Gammie, we're bound by our prior circuit precedent unless it's clearly irreconcilable with a superior precedent from the Supreme Court or an en banc court. So could you frame your jurisdictional argument for a moment in terms of which specific higher authority makes our prior precedent clearly irreconcilable? Well, I think that the case that's probably most clearly on point is the Supreme Court decision in Heckler v. Cheney, where the Supreme Court noted that it is an exceedingly rare circumstance where an agency's action will be left purely to discretion. And Heckler v. Cheney is the basis for this Court's decisions in Diaz-Covarrubias, in Akeemian, and in other related cases. So what I think the Heckler court would probably acknowledge at this point is that, given that the agency has now published a decision that gives guidance to the court in terms of whether they can find an abuse of discretion, that is now a reviewable decision. And one thing that I'd really like to note for the Court is that the Abbottesian decision that's really the basis of the Petitioner's arguments actually notes by its own terms that they anticipate review. And I'd like to direct the Court's attention to the Abbottesian decision at page 695, where the Board states that the factors they enumerate are routinely evaluated by immigration courts, the Board, and, and I quote, the circuit courts. And they are citing in that section to Heckler v. Cheney. Thus, the Attorney General's assertion that these factors are not amenable to judicial internal operating mechanisms of the Board of Immigration Appeals simply don't hold water. The agency itself in Abbottesian has acknowledged that they anticipate review of challenges to their administrative closure decisions. Now, I'd like to address the abuse of discretion question a little bit further, Your Honors. In Mr. Gonzalez — I think that the abuse of discretion question necessarily implicates what actually happened in Mr. Gonzalez-Caraveo's case. And in his case, what the agency said when they upheld the decision of the immigration judge was that the department — this is a quote from the agency — the Department of Homeland Security objected to administrative closure, had already informed the respondent that it would be denying his request for prosecutorial discretion, and under these circumstances, administrative closure would not have been appropriate. The Board's articulation of reasons to support the denial of administrative closure betrays the Board's precedent in Abbottesian. The Board notes only two factors in denying the administrative closure — the department's objection, though with no articulation of the reasons for that objection, and the department's denial of prosecutorial discretion, which the attorney general has asserted is outside the purview of the Board's considerations. They didn't address anything else. They effectively went back to their pre-Abbottesian one-party objection rules the day precedent. And they also disregard their clarification in WYU that a party opposing administrative closure must articulate the reasons that the case should proceed on the merits. Because I'd like to reserve some time, I will save the rest of my arguments, but I do again assert that if the court agrees that the failure to inquire into the Abbottesian factors or show consideration of those factors or state reasons for the denial of administrative closure is an abuse of discretion, then the case must be remanded. May it please the Court. I'm Jonathan Robbins here on behalf of Jefferson Sessions, the United States Attorney General. Good morning to all of you. The issue in this case, as my colleague correctly pointed out, or the primary issue in this case, is whether or not the Court has jurisdiction to review the Board's determination. The primary issue in this case is whether or not the Court has jurisdiction to review post-Abbottesian the Board's determination regarding whether or not it wants to administratively close a case. Now, that question necessarily implicates whether or not Abbottesian creates a meaningful standard for review, because as my colleague correctly acknowledged, this Court's prior precedent in Dias Covarrubias v. Mukasey definitively held that this Court lacked jurisdiction to review denials of administrative closure because there was no meaningful standard. And the answer to that question is that Abbottesian does not create a meaningful standard. Now, I know that there are specifically the Eighth Circuit, additional circuits which have held that Abbottesian does create a meaningful standard. But those circuits did not specifically look at exactly what Abbottesian said about the matter. Abbottesian was very careful in its language. Abbottesian said that, quote, it is appropriate for an immigration judge or the Board to weigh all relevant factors presented in the case, including but not limited to, and then it lists six factors. So, and then, in Abbottesian, the Board gives a bunch of examples of common situations that arise in the context of administrative closure, most notably situations where aliens may be, or applicants may have a pending visa petition, but that it's, whether or not a visa is going to become available is somewhat speculative, or how much in the future, it could be available many years in the future. So what the Board is explaining is that it has to figure out what makes sense for its docket. Does it make sense to adjudicate the case? Does it make sense to remove the case from the docket and wait? Is the case going to end in termination? It's trying to make sense of whether it makes sense to move forward on its docket. So you challenged the interpretation of a TSIN. Abbottesian, yes. Abbottesian. You don't cite any other authority, do you? I mean, is there any other authority that you'd like to show us a case or? Absolutely. Well, if you want to see that the Abbottesian factors don't create a judicially meaningful standard, all you need to do is look at the Board's next decision in matter of WIU. Matter of WIU actually dealt with a different type of administrative closure situation, and the Board acknowledged and said, look, the six factors that we outlined in Abbottesian, they should be considered, but they're not really the primary consideration in this type of administrative closure. The primary consideration in the type of administrative closure that was at issue in WIU was whether or not the person who opposed administrative closure should be considered. So the fact that it's a non-exhaustive list, do you think, is the linchpin for your argument? It's not the linchpin, but it does go to meaningful standard. That's only part of the argument. The primary part of it does go to meaningful standard, or at least it seems to be from a fair reading of that. It's just, you know, it's interesting to me that in the face of Abbottesian that you, on behalf of the government, are arguing that there's no basis to for the courts to review administrative closure. Well, it's not just the language of Abbottesian itself, Your Honor. I mean, that's the agency itself coming out with that. So it's a remarkable posture that this case is in now. Well, I don't agree, Your Honor, because it doesn't take into account, and one of the things that in my view is a primary flaw in the Eighth Circuit's rationale, is they don't even mention Heckler v. Cheney. And Heckler v. Cheney speaks specifically to this point, because Heckler v. Cheney considers that agencies may consider a list of factors. In fact, let me read you the exact language, because from Heckler v. Cheney, they're talking about the general unsuitability for judicial review of agency decisions to refuse enforcement. And what they say is, quote, "'First, an agency decision not to enforce often involves a complicated balancing of a number of factors, which are peculiarly within its expertise.'" So what's missing from the Eighth Circuit's decision isn't what the Supreme Court is saying is, of course you're going to be balancing a number of factors. That's not what creates the meaningful standard. You're going to be balancing factors whether there's a meaningful standard or not. What matters is whether those factors are peculiarly within the agency's expertise. Are those factors traditionally the same? So the Eighth Circuit specifically says that Avatisayan provided a usable standard to review denials. Well, I certainly understand that view, Your Honor. But first of all, the Eighth Circuit doesn't make the meaningful standard. But you just said right now it doesn't provide a meaningful standard. I'm just quoting what the Eighth Circuit says. So I think your argument is probably that you disagree with the Eighth Circuit. We certainly disagree. But the reason they don't acknowledge a meaningful standard, that's a little bit different. Well, our argument is twofold. One, we think the board itself didn't set forth a meaningful standard or even intend to set forth a meaningful standard by the very nature of the fact that it didn't make the factors exhaustive. In other words, it didn't set up a test that is to apply every time. And it was very clear about not doing that. In fact, they say, quote, We emphasize, however, after listing the factors, they say, We emphasize, however, that these are examples only. Each situation must be evaluated under the totality of the circumstances.  The law under Díaz-Covarrubias is still applicable. In other words, we're still looking at an infinite number of factors. It just depends on what type of administrative closure we're looking at. In Abitision, we were looking at situations where an alien was eligible for a visa. But then, of course, the board has a subsequent decision in WIU, which didn't implicate that. In WIU, it's a little bit more akin to the situation we have here, because the person in removal proceeding there was seeking prosecutorial discretion. Now, that's, your Honor alluded to this before. And the remedy here is particularly problematic, right? Well, talk to me about that. I'd like to hear your view. Well, the Petitioners aren't making any bones about it. They're attacking DHS's refusal to prosecute to exercise prosecutorial discretion, which all the courts are in agreement, this court, every court, that there's no jurisdiction to review a prosecutorial discretion or DHS's grant. And they're essentially trying to strong-arm the board here into administrative closure to force DHS's hand to grant prosecutorial discretion, because the practical reality of the way it's been implemented recently is that the case gets administratively closed, and then it's just held in perpetuity, and it never gets pursued. So WIU is actually a little bit more akin to this case than Avotisian itself. And WIU specifically says the six factors in Avotisian, you should consider them, but they're not they're really secondary to a primary consideration, which is whether the person opposing the administrative closure is providing a persuasive reason for doing so. Now, think about that. In WIU, they're saying it's not the six factors that are primary, but it's this one factor. But that one factor is actually very similar to the factors that would be considered under the case law prior to Avotisian, right? Because prior to Avotisian, in Dias Covarrubias, this Court said there's no jurisdiction and no meaningful standard. Well, what was the what were the board considering in cases of administrative closure back then? Really only two things. They were considering whether the case was opposed, whether administrative closure was opposed, and whether there was a valid reason for administrative closure, right? So those are very similar to the standard. In fact, the WIU standard is even less of a meaningful standard. They're considering less factors, and they're just considering the reason. So WIU makes clear that certainly in cases involving prosecutorial discretion, there shouldn't be any jurisdiction. Counsel, Judge Gould, if I could interject. I don't mean to get you off the trail of more important issues, but I would like to know your government perspective on the same issue I asked your friend on the other side of the aisle. You know, is there a higher precedent from the Supreme Court or from an NBANC panel that makes our Diaz case or our no-jurisdiction precedent really irreconcilable with it? Because I was not aware that that standard would contemplate that its intention was some agency decision. I am not aware of any higher precedent. In fact, I think I can comfortably say there is not a higher precedent that would overturn Diaz-Covarrubias. I would note that there is a published decision that it's an additional factor that this Court has to consider that the other circuits that have considered this Court have not had to consider. There is binding precedent in a case called Vilces Soto, in which this Court held that the statutory provision at 1252G, which provides that there's no jurisdiction out of causes or claims arising out of, among other things, the Attorney General's decision to adjudicate cases, prevents jurisdiction over motions to reopen to seek prosecutorial discretion. Now, I don't think there should be much of a dispute that with motions – there's no dispute that motions to reopen are ordinarily within this Court's discretion. And yet this Court has binding precedent, Your Honor, that says that under the statute at 1252G, there's no jurisdiction to review motions to reopen when they're used to seek prosecutorial discretion. Well, if the – if it's not allowed for a motion to reopen under 1252G, how could it be allowed for administrative closure where the arguments for jurisdiction are significantly weaker? So I think this Court has to grapple with precedent that other circuits which have found jurisdiction don't have to grapple with. That's a binding precedent. And the binding precedent in Vilces Soto makes sense in the context of other similar situations where we've seen this. For example, when applicants apply for the relief of cancellation of removal, one of the things that they have to demonstrate is that they would demonstrate exceptional and extremely unusual hardship to a qualifying relative. And the courts are all in agreement that that is a discretionary determination by the attorney general, and the courts ordinarily – the courts do not have jurisdiction to review it. Well, what aliens were doing in those cases is they would often file motions to reopen, reattacking the hardship determination. And the courts rejected their ability to try and restore jurisdiction that way. They said we still don't have jurisdiction over motions to reopen when the underlying problem is something we don't have jurisdiction over. The same thing applies in prosecutorial discretion here. Don't forget, at the end of the day, this is about a challenge to DHS's refusal to grant prosecutorial discretion. This makes this different from Abitision and makes – puts it more in the W – matter of WIU category. So it's not just the fact that Heckler v. Cheney – Heckler v. Cheney says that just because we have a number of factors doesn't automatically make this a judicially manageable standard. The courts have to look deeper at whether the standards that are outlined are peculiarly within the agency's expertise. And what could be more peculiarly within the agency's expertise? What could be more traditionally in the agency's traditional discretion than the management of its own docket? I mean, even if you didn't have the statute, even if you didn't have the Supreme Court's decision in Heckler, even if you threw all the law outside and you were just considering whether you should have jurisdiction, I would hope that just sort of as a matter of legal instinct, it should feel wrong when a court is asked to interfere in the docket management of another court, right? It's – ordinarily, when there are jurisdictional questions, judges consider – judges oftentimes lean towards jurisdiction because there's a protective interest at stake, right? They're worried that if jurisdiction isn't maintained, somebody's rights could be infringed upon, there could be an abuse of discretion. Courts tend to err on the side of jurisdiction. But that protectionary interest isn't really relevant, or at least is very diminished here, because the court is essentially being asked to protect the board and immigration judge from the management of its own docket. And in particularly in a situation where it's to seek prosecutorial discretion, which the board doesn't even have jurisdiction to review. They can't even look at DHS's refusal to grant prosecutorial discretion. This is an instance where you should want to not exercise jurisdiction. Courts shouldn't be interfering. In fact, take, for example, when this Court considers cases for whether it's going to hear a case en banc, for en banc review, right? The Supreme Court doesn't review your decisions to determine whether you consider the factors that are outlined in Federal Rule of Appellate Procedure 35. That's the four standards you're supposed to consider, whether it creates a circuit conflict, whether it creates a – whether it's an issue of particular importance. But they don't review that because they understand that's your court's call to make. It's traditionally within your discretion. They don't send it back down for you to – that you say that you must hear this for en banc. It's very similar to administrative closure. Nobody has a right to administrative closure just like nobody has a right to an en banc hearing, right? It's the court's call to make, and it's the board's own call to make. Does this make sense for its own docket? So the court shouldn't exercise jurisdiction here, even if – I mean, the law, I believe, supports it, both under this Court's precedent and certainly under Heckler v. Cheney. I mean, when you read Heckler v. Cheney, you could – they're talking about an FDA case and an FDA rule, but you could substitute administrative closure in for what they're talking about, and it fits perfectly. I mean, listen to what they talk about. I mean, the agency has to assess whether a violation has occurred. The agency has to determine whether resources are best spent on the violation, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, whether the agency has enough resources to undertake the action at all. I mean, those are all things that the board is considering in administrative closure. And the Supreme Court in Heckler v. Cheney said there shouldn't be jurisdiction over that. That's the kind of peculiar expertise that is generally left to the agency's discretion. I know it may seem like a daunting task. There are four circuits that have found jurisdiction post-abitision. I agree that it may seem daunting, but those decisions are – they don't consider Heckler v. Cheney. Kagan. Kagan. They're all wrong. I believe so, Your Honor. And let's take a look at the Seventh Circuit. The Seventh Circuit has an even weaker rationale than the Eighth. They said, well, administrative closure is basically like a continuance, so – and we look at continuances, so why not look at administrative closure? Well, this case is a textbook example of why they got that wrong. Petitioners aren't trying to use administrative closure in this case like a continuance. They don't want this ever rescheduled. They want this held in perpetuity forever. This isn't like a continuance, not to mention the fact that continuances are inextricably tied to due process rights. You need a continuance because you need time to find an attorney or you need time to gather evidence or you need time to basically have an opportunity to fully and fairly present your claim. That's not – that's not implicated by administrative closure. No one has a right to have their case removed from a docket in perpetuity. So I – oh, I just – that's it for time. So unless there are any other further questions, we would respectfully request that the Court find that the Court lacks jurisdiction, and in the alternative, of course, it's certainly not an abuse of discretion not to administratively close a case when there's no form of relief pending. And I – we didn't even get to the Catt claim. Thank you. You haven't? Okay. Thank you very much for your time, Your Honors. I'd just like to briefly address a couple of issues that the Attorney General has raised. Most notably, I think, their concerns regarding 1252G, which I just don't think are applicable at all in this case. The Vilcci-Soto case that they reference is a decision on reopening. And this Court's prior precedent has found that reopening does implicate 1252G concerns, because this is related to the agency's pursuing proceedings or instituting proceedings. However, Abbottisian addresses, again, at page 694, that 1252G is not disturbed by any decisions related to administrative closure. And in Díaz-Cova-Rubias, in fact, the Court cites to Alcaraz v. INS, which notes that administrative closure doesn't implicate any 1252G concerns. Going back to the idea that there's no meaningful standard in Abbottisian, that's simply not the case. I mean, the Board of Immigration Appeals has outlined several factors. They're the primary factors that are considered by the agency when they're determining whether or not to administratively close a case. And this Court has found that in similar circumstances, like in Sandoval-Luna, the standard for a continuance for good cause shown is sufficient guidance. So it is our position that by illuminating several factors and then elaborating on those factors, the Board in Abbottisian and in WYU has definitely given a sufficiently meaningful standard for review. And so, just I want to make it clear. So if it, let's say we've followed what you request here and what you're arguing and we send it back, would you make a request for administrative closure at that point, a new request? Would you be seeking prosecutorial discretion? I'm trying to figure out what would happen. So we're certainly not trying to strong-arm the Board into somehow granting prosecutorial discretion, as I think the Attorney General implies. What we would be asking for is for the Board to articulate the reasons why administrative closure was not granted or whether, or articulate why they will grant it. I acknowledge, Your Honor, that given the change in time, so let me backtrack and say it was puzzling to us at the agency that the case was not administratively closed during the time frame that we were in. Today, enforcement priorities are different, and I understand that if we do return to the Board of Immigration Appeals on this administrative closure request, it's probably more unlikely that they will grant administrative closure. Because your basis was prosecutorial discretion. Well, we both asked for prosecutorial discretion and for administrative closure. Those are, we acknowledge those are two separate things. All right. Thank you. Thank you. Thank you both for your arguments here today. The matter of José Alberto González Caraveo and Mónica Rodríguez-Flores v. Sessions is now submitted.
judges: Gould, Murguia, Freudenthal